```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA                                         :
                                                                 :
        -v-                                                      :          22-CR-121 (LJL)
                                                                 :
ÁLVARO FREDY CÓRDOBA RUIZ, ALBERTO                               :         MEMORANDUM &
ALFONSO JARAMILLO RAMÍREZ, LIBIA AMANDA                          :             ORDER
PALACIO MENA,                                                    :
                                                                 :
                        Defendants.                              :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/16/2023

LEWIS J. LIMAN, United States District Judge:

On January 20, 2023, the Indictment in this case was unsealed. Dkt. No 3. The Indictment charged defendants Álvaro Fredy Córdoba Ruiz ("Córdoba Ruiz"), Libia Amanda Palacio Mena ("Palacio Mena"), and Alberto Alonso Jaramillo Ramírez ("Jaramillo Ramírez") in three counts (together the "Defendants"). Dkt. No. 2. Count One charged the three Defendants with participating in a conspiracy from July 2021 to February 2022 to import cocaine into the United States, in violation of 21 U.S.C. § 963 and 18 U.S.C. § 3228. Dkt. No. 2 ¶¶ 1–5. Count Two charged the three Defendants with the knowing use and carriage of firearms during and in relation to the narcotics crime charged in Count One, and with knowingly possessing and aiding and abetting the use, carriage, and possession of firearms in furtherance of that crime, in violation of Title 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2. Dkt. No. 2 ¶ 6. Count Three charged the three Defendants with conspiracy to possess machine guns and destructive devices during and in relation to the narcotics offense in Count One and in furtherance of that offense, in violation of 18 U.S.C. §§ 924(o) and 3238. Id. ¶¶ 7–8. Córdoba Ruiz and Palacio Mena, who were extradited from Colombia, were arraigned on January 31,

2023. Jaramillo Ramírez has yet to appear in this District. On February 28, 2023, the Grand Jury returned the superseding indictment, S1 22 Cr. 121, which dropped Counts Two and Three. Dkt. No. 12. The jury trial of this action is scheduled for January 22, 2024. Apr. 13, 2023 Minute Entry.

Defendant Córdoba Ruiz moves pretrial for: (a) an order compelling the Government to produce as *Brady* material information Córdoba Ruiz contends is relevant to preparing an entrapment defense; (b) additional discovery or a hearing on issues related to the recording of a meeting on December 17, 2021 between Defendants and an informant which does not contain the entirety of the meeting; (c) an order compelling production of communications and other evidence of the cooperation between United States and Colombian law enforcement which the Defendants contend they need to assess whether to make a suppression motion; (d) a pretrial deadline for production of translated materials; and (e) early production of the Government's witness list, 3500 material, and expert notice. Dkt. No. 33. The motion is joined in by Defendant Palacio Mena.

The Court held a hearing on October 5, 2023, during which certain issues were clarified or narrowed. In particular, at argument, the Defendants made clear that they were not seeking the identities of the Government's confidential sources ("CSs") or to review the law enforcement files for the CSs, and that their request for *Brady* material was limited to: (1) instructions given to the CSs indicating that a particular person with whom Córdoba Ruiz had a relationship was a target of the investigation; (2) the specific instructions that the Government gave the CSs about approaching Córdoba Ruiz; (3) information in the possession of law enforcement at the time of the investigation about the lawful employment of Córdoba Ruiz and that he was not predisposed to criminal activity; and (4) as Rule 16 material, any information in the possession of the

Government suggesting that Córdoba Ruiz had a predisposition to criminal activity. During the hearing, the Government indicated it believe it could commit to producing to the defense information in category (2) above when it produces material pursuant to 18 U.S.C. § 3500 (regardless of whether the confidential sources are called as witnesses) and to reviewing and producing information in categories (3) and (4) as Rule 16 and *Brady* material. It declined to produce information in category (1) as *Brady* or Rule 16 material. In a post-argument letter, the Government confirmed that, while it disagreed that information in categories (1) and (2) constituted *Brady* material, it would produce such information on the deadline for Section 3500 and *Giglio* material of 30 days in advance of trial, and that it would endeavor to produce the material (with applicable designations under the Protective Order in this case) 45 days in advance of trial. Dkt. No. 50.[1] The parties have since resolved the questions of a pretrial deadline for production of translated materials and early production of the Government's witness list, 3500 material, and expert notice by agreement.

The Court addresses the remaining issues in turn. For the following reasons, the motions are denied.

## DISCUSSION

I. **Motion to Compel Production of Brady and Rule 16 Material**

First, the defense seeks an order compelling the production of *Brady* and Rule 16 material relevant to an anticipated entrapment defense.[2]

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government, upon request, to permit the defendant to inspect or copy documents and data "if the item is within the

---

[1] The Government appropriately added that to the extent that the materials from CS files raised unforeseen safety or other concerns, the Government would confer with defense counsel as appropriate and, if necessary, seek guidance from the Court. *Id.* at 2.

[2] At argument at the hearing, the defense stated that it was not seeking an order requiring the Government to disclose the names of the CSs or to provide access to the CS files.

government's possession, custody, or control" and "material to preparing the defense" or "the government intends to use the material in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). "Under *Brady*, the prosecution is required to disclose evidence 'where the evidence is *material* either to guilt or to punishment.'" *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "'Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.* (quoting *Turner v. United States*, 582 U.S. 313, 324 (2017)). A *Brady* disclosure must be made "in time for its effective use" at trial. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001); *see United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016).

The Court already has issued a Rule 5(f) order requiring the Government to comply with its *Brady* obligations. Dkt. No. 23. At the October 5 hearing, the Government represented that it has requested the CS files and will review them for *Brady* material when they are received, which it estimates will be in approximately 30 days from the date of the hearing. Dkt. No. 48 at 27–28. It has represented that it will produce as *Brady* and/or as Rule 16 material the information that law enforcement had during the course of the investigation and the information it subsequently acquired whether Córdoba Ruiz had a disposition toward criminal activity. It also has represented that it will produce the instructions to the CSs regarding the other target of the investigation and the specific instructions that the Government agents gave to the CSs about approaching Córdoba Ruiz at the time it produces the 3500 and *Giglio* material.[3] The Court sees no need for a further *Brady* order.

---

[3] At oral argument, the defense raised questions regarding whether the production of this material in connection with the 3500 material will be sufficiently early for the defense to make effective use of it. But neither the Court nor the defense (nor the Government) has seen the material at issue. Moreover, the defense has opted not to respond to the

4

To establish an entrapment defense, Córdoba Ruiz will have to present some credible evidence of Government inducement of the crime, at which point the burden will shift to the Government to prove beyond a reasonable doubt that he was predisposed to commit the crime. *See Mathews v. United States*, 485 U.S. 58, 63 (1988); *United States v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014). The defendant's burden to show inducement is "relatively straightforward" and "'relatively slight.'" *United States v. Cabrera*, 13 F.4th 140, 146–47 (2d Cir. 2021) (quoting *United States v. Brand*, 467 F.3d 179, 190 (2d Cir. 2006), *abrogated on other grounds*). The defendant "need not prove by a preponderance of the evidence . . . that the government induced him to commit the crime." *Id.* at 147. Córdoba Ruiz will simply need to proffer some credible evidence that "the government initiated the crime, . . . includ[ing] [by] 'soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged.'" *Brand*, 467 F.3d at 190 (quoting *United States v. Sherman*, 200 F.2d 880, 883 (2d Cir. 1952) (L. Hand, *J.*)). The predisposition inquiry focuses on whether the accused was "'ready and willing without persuasion and was . . . awaiting any propitious opportunity to commit the offence.'" *United States v. Mayo*, 705 F.2d 62, 67 (2d Cir. 1983) (quoting *Sherman*, 200 F.2d at 882). "[P]redisposition may be shown by evidence of: '(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.'" *Brand*, 467 F.3d at 191 (quoting *United States v. Brunshtein,* 344 F.3d 91, 101–02 (2d Cir. 2003)). It can be established by evidence that the suspect "promptly avails himself of a

---

Government letter laying out the timetable upon which it intends to produce this material. In what the Court deems to be the unlikely event that there is something sufficiently material in the instructions that they would constitute *Brady* and not *Giglio*, the defense will know that well in advance of a jury being impaneled and it can raise the issue at that point.

5

government-sponsored opportunity to commit a crime." *Id.* at 193–94 (internal alterations and quotation marks omitted).

It is questionable whether Córdoba Ruiz will be able to satisfy the predicates of an entrapment defense at trial. The Government has proffered evidence that he was introduced to the criminal venture by Palacio Mena and that before he was ever introduced, Palacio Mena had discussions with the CSs establishing a cocaine supply line from Colombia and Venezuela and a plan to sell a large load of cocaine to Mexican associates which would ultimately be transported to New York. It appears that, as to Córdoba Ruiz, it was Palacio Mena and not the Government who "'set the accused in motion.'" *Brand*, 467 F.3d at 190 (quoting *Sherman*, 200 F.2d at 883). The Government also has proffered evidence of Córdoba Ruiz's responses to the confidential sources as proof that he was predisposed to the criminal activity.

The Court assumes, however, that Córdoba Ruiz has made a sufficient showing that he might have an available entrapment defense to require the Government to review material in its possession that could support that defense. Córdoba Ruiz has not established that evidence that the Government had an additional and more significant target of the investigation is necessarily *Brady* material. In initiating any investigation, law enforcement must make decisions about how and where to devote its resources. The fact that law enforcement had another target in mind when it began investigating Córdoba Ruiz or that it devoted its resources to the investigation of Córdoba Ruiz in the hope that it would land a bigger fish is not, without more, relevant to any entrapment defense. It does not make it any more or less likely that it was the Government who induced the crime or that Córdoba Ruiz was not predisposed to commit the crime. On the other hand, however, to the extent that there is evidence that the CSs had a motive to induce Córdoba Ruiz in particular to commit a crime (because his commission of a crime would assist the law

6

enforcement in investigating others more senior to him), the Court can see how evidence of such a motive could be relevant to an entrapment defense. In the end, whether evidence constitutes *Brady* material is context specific. In the absence of any evidence that the Government has fallen short in its *Brady* obligations and in the face of evidence that it is taking those obligations seriously,[4] the Court will neither issue a further order nor micromanage how the Government discharges its *Brady* obligations. *See United States v. Neumann*, 2022 WL 3445820, at *18 (S.D.N.Y. Aug. 17, 2022) (holding that speculation that the Government had not satisfied its *Brady* obligations was insufficient to show that it had failed to meet such obligations); *United States v. Gillier*, 2022 WL 179204 at *2–3 (S.D.N.Y. Jan. 19, 2022) (holding that where defendant had not identified any Rule 16 material that had not been produced and where Government pledged its continued compliance with Rule 16 and *Brady*, defendant was not entitled to an order compelling the Government to produce such materials); *United States v. Gatto*, 316 F. Supp. 3d 654, 657–58 (S.D.N.Y. 2018) (same).

## II. Motion for Additional Discovery or a Hearing Regarding the Recording of the December 17, 2021 Meeting

The defense argues for additional discovery or a hearing on issues related to the recording of a meeting on December 17, 2021 between Defendant and the CS. Reply Br. at 6. As noted, the recording did not capture the entirety of the meeting. According to a DEA Form 6 that contains a report of the meeting, the recording device possessed by the CS ran out of battery due

---

[4] The defense initially accused the Government of leaving gaps in the production of *Brady* and Rule 16 material based on the fact that it produced an audio recording of a meeting on October 30, 2020, with a file name "DO NOT TRANSLATE" and that on an occasion on December 17, 2021, the confidential source failed to record the entirety of a meeting with Defendants. The Government has adequately explained both. The October 2020 tape was of a meeting between the two CSs and the Drug Enforcement Administration Agent; it was marked "DO NOT TRANSLATE" because the Government will not seek to introduce it at trial. Gov't Mem. at 19. The December 2021 meeting lasted over four hours. The battery on the cellphone of the CS ran out during the meeting. The Government represents that it has produced 300 recordings of the Defendants' calls and meetings with the CSs and over 100 draft translation summaries. *Id.* at 14–15.

7

to the length of the meeting. Dkt. No. 35-7. Córdoba Ruiz contends that "it is unclear on the present record whether the Government has conducted a sufficient review of the evidence pertaining to the December 17 meeting to satisfy its disclosure obligations." Reply Br. at 6. The defense asserts that there might have be *Brady* material in the unrecorded portions of the meeting. It also asserts that it needs to know what happened during that unrecorded portion to decide whether to make a spoliation motion. It suggests that the Court hold a hearing regarding what happened during the remainder of the meeting or, in the alternative, provide a declaration from the CS.

That motion is denied. The defense has offered no evidence to support a claim of spoliation. "'[T]he Government is not obligated to record every interaction between a confidential source and a suspect.'" *Neumann*, 2022 WL 3445820, at *10 (quoting *United States v. Campo Flores*, 2016 WL 5946472, at *3 (S.D.N.Y. Oct. 12, 2016)). Thus, no inference can be drawn from the fact that the recording does not cover the entirety of the meeting. The defense offers no basis to believe that evidence was destroyed; the record before the Court indicates that such evidence was not created. Nor is there a basis to believe that "the government must have acted in bad faith in failing to preserve or destroying the evidence." *Id.* at *9 (citing *Arizona v. Youngblood*, 488 U.S. 51, 56–58 (1988)).

The assertion that the unrecorded portions may contain *Brady* material that has not been disclosed is based on pure speculation. During the meeting, the participants discussed Defendants' ability to deliver large amounts of cocaine to the CS and that they would take the CS to persons in charge of the drug supply. After the meeting, the CS was taken to a location where he was given a five-kilogram sample of cocaine. Córdoba-Ruiz—who was present at the meeting at issue—has not proffered any basis to believe that the parts of the meeting that were

unrecorded were exculpatory.  At the hearing, the Court suggested that the Government make inquiries of the CS to determine whether there is any material that could be considered to be *Brady* during the portions of the meeting that were not recorded.  The Court assumes that the Government will discharge those duties and need not specify exactly how it must do so.  *See Gatto*, 316 F. Supp. 3d at 657–58.

### III. Motion for Evidence of Cooperation Between the United States and Colombian Law Enforcement

Third, the defense moves for evidence of cooperation between the United States and Colombian law enforcement authorities on grounds that the discovery materials produced to date suggest that the Colombian authorities were acting as virtual agents of the United States and seek to learn what role the DEA played in identifying the phones tapped in Colombia, initiating the wiretap, reviewing the intercepted calls, and organizing any accompanying surveillance, including Mutual Legal Assistance Treaty ("MLAT") related materials.  The Government responds that (1) the Defendants have no Fourth Amendment rights that could be implicated by cooperation between United States authorities and foreign law enforcement because Defendants are citizens of Colombia who were resident in Colombia with no voluntary attachment to the United States and the challenged interceptions occurred on Colombian soil; and (2) there is no evidence that the Colombian authorities acted as agents of United States law enforcement.

The Second Circuit has recognized only two circumstances where evidence obtained in a foreign jurisdiction may be excluded: (1) "where the conduct of foreign officials in acquiring the evidence is 'so extreme that they shock the judicial conscience'"; or (2) "where cooperation with foreign law enforcement officials may implicate constitutional restrictions."  *See United States v. Maturo*, 982 F.2d 57, 60–61 (2d Cir. 1992) (quoting *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978), *cert. denied*, 442 U.S. 931 (1979)).  "Within the second category for excluding evidence,

constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials." *Id.* at 61 (internal citations omitted).

Defendants argue that the second exception applies. But that argument is without merit. For one, the Supreme Court has held that the Fourth Amendment does not apply to searches and seizures of property located abroad and owned by a nonresident alien with no voluntary attachment to the United States. *See United States v. Verduo-Urquidez*, 494 U.S. 259, 274–75 (1990). It follows that the constitutional restrictions on tapping phones, which derive from the Fourth Amendment, also do not protect foreign nationals with no voluntary attachment to the United States who are on foreign territory from the tapping of telephone lines based on foreign territory. *See United States v. Juan Vincent Gomez Castrillon*, 2007 WL 2398810, at *3 (S.D.N.Y. Aug. 15, 2007).

For another, Defendants have proffered no evidence that the Colombian authorities acted in any way as agents or virtual agents of United States law enforcement. "In order to render foreign law enforcement officials virtual agents of the United States, American officials must play some role in controlling or directing the conduct of the foreign parallel investigation." *United States v. Getto*, 729 F.3d 221, 230 (2d Cir. 2013). "It is not enough that the foreign government undertook its investigation pursuant to an American MLAT request." *Id.* In *Maturo*, the Second Circuit held that officers of the Turkish National Police ("TNP") were not acting as agents of United States law enforcement in conducting a wiretap on Turkish soil even though the DEA "provided money, information and wiretapping equipment to the TNP,"

provided "immediate access" to the tapes at all times, and at times sought the assistance of the DEA in translating the tapes into Turkish, and even though the TNP only commenced the wiretaps after a request for background information from the DEA made by the DEA with the hope that it would prompt a wiretap, because the TNP still "acted of its own accord." 982 F.2d at 59–60, 62.  In this case, the Government asserts, and Defendant does not refute, that all of the cooperation it had with the Colombian authorities was with respect to an MLAT request—United States law enforcement provided phone numbers to Colombian law enforcement and received evidence via an MLAT request pursuant to the bilateral treaty between the United States and Colombia.  Gov't Mem. at 31–32; *see* Def. Motion at 13–14 (citing MLAT request).  That is not enough to make the Colombian authorities "agents" of United States authorities.

*United States v. Karake*, 281 F. Supp. 2d 302 (S.D.N.Y. 2003), on which the defense relies, is inapposite.  In that death penalty case, the defendants were arrested in Rwanda, made statements to Rwanda law enforcement, and then were extradited to the United States.  The court ordered the Government to produce evidence of cooperation between the United States and the government of Rwanda on the theories that "'statements elicited during overseas interrogation by foreign policies in the absence of *Miranda* warnings must be suppressed whenever United States law enforcement agents actively participate in questioning conducted by foreign authorities.'" *Id.* at 308 (quoting *United States v. Yousef*, 327 F.3d 56, 145 (2d Cir. 2003)).  The court thus reasoned that evidence of an agency relationship could give rise to a constitutional violation.  *Id.* at 309.  The court also concluded that "[q]uestionable extradition procedures of capital defendants may also give rise to mitigating circumstances to be considered during sentencing." *Id.*  Neither basis is operable here.  The Government has not produced any post-arrest statements.  The Supreme Court in *Verduo-Urquidez* was careful to distinguish the Fourth Amendment rights

11

implicated by a search and seizure from the Fifth Amendment rights implicated when a defendant is interrogated. 494 U.S. at 264. And this case is not a capital case. Thus, even assuming that *Karake* was correctly decided, it provides no assistance to Defendants here.

## CONCLUSION

Defendants' motions are DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 33.

SO ORDERED.

Dated: October 16, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge