**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

ÁLVARO FREDY CÓRDOBA RUÍZ,

      Defendant.

---

ÁLVARO FREDY CÓRDOBA RUÍZ,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

S1 22 Cr. 121 (LJL)

25 Civ. 9906 (LJL)

**DECLARATION OF JOHN T. ZACH IN RESPONSE TO**
**ÁLVARO FREDY CÓRDOBA RUÍZ'S MOTION PURSUANT TO 28 U.S.C. § 2255**

1.      Since 2015, I have been a partner at the law firm of Boies Schiller Flexner LLP. For approximately 10 years, I have been a member of the Southern District of New York's Criminal Justice Act Panel. Previously, from 2006 through 2015, I was an Assistant United States Attorney in the Southern District of New York and, from 2001 through 2006, I was an associate at the law firm Cravath, Swaine & Moore LLP.

2.      I previously served as court-appointed counsel for Álvaro Fredy Córdoba Ruíz ("Mr. Córdoba Ruíz") in *United States v. Córdoba Ruíz*, No. 22 Cr. 121 (LJL), and respectfully submit this declaration pursuant to the Court's January 28, 2026 Order directing me to provide information addressing the allegations of ineffective assistance of counsel raised in Mr. Córdoba Ruíz's *pro se*

1

petition under Title 28, United States Code, Section 2255.  *See* ECF No. 139 (Order); *see also* ECF No. 135-36 (Petition).

## MR. CÓRDOBA RUÍZ'S PETITION

3.      On or about November 25, 2025, Mr. Córdoba Ruíz filed an Amended Motion, pursuant to 28 U.S.C. § 2255 seeking to vacate or reduce his sentence on the basis of alleged ineffective assistance of counsel.  *See* ECF No. 135 (the "Petition").  In sum and substance, Mr. Córdoba Ruíz alleges in the Petition that I provided constitutionally deficient assistance of counsel by failing to properly advise him of the nature and effect of his plea agreement, that the plea agreement offered him no material benefits, and that it contained unwarranted enhancements (and a lack of safety valve qualification).  While not directly relevant to the current application, I can unequivocally state that Mr. Córdoba Ruíz was one of the most sympathetic and kindly clients I have represented while serving on the Panel and—respectfully—believe he received too severe a sentence in this case.  However, with respect to the allegations advanced in the Petition, Mr. Córdoba Ruíz is, for the reasons set forth below, incorrect.

4.      On January 28, 2026, the Court directed me to submit information responsive to those allegations.  *See* ECF No. 139.

5.      On or about February 19, 2026, Mr. Córdoba Ruíz filed an executed and notarized Waiver of attorney-client privilege permitting former counsel to respond to the allegations raised in the Petition.  *See* ECF No. 140.

## PROCEDURAL HISTORY AND SCOPE OF REPRESENTATION

6.      On or about January 20, 2023, the initial indictment in Mr. Córdoba Ruíz's case was unsealed.  *See* ECF No. 3; *see also* ECF No. 2 (the "Indictment").  Count One of the Indictment charged Mr. Córdoba Ruíz, and two co-defendants, with participating in a conspiracy to import cocaine into the United States, in violation of 21 U.S.C. 963 and 18 U.S.C. § 3238.  ECF No. 2 ¶¶

1-5. Count Two charged the three Defendants with the knowing use and carriage of firearms during and in relation to the narcotics crime charged in Count One, and with knowingly possessing and aiding and abetting the use, carriage, and possession of firearms in furtherance of that crime, in violation of Title 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2. *Id.* ¶ 6. Count Three charged the three Defendants with conspiracy to possess machine guns and destructive devices during and in relation to the narcotics offense in Count One and in furtherance of that offense, in violation of 18 U.S.C. §§ 924(o) and 3238. *Id.* ¶¶ 7–8.

7.      On the same day the Indictment was unsealed, I was appointed pursuant to the Criminal Justice Act to represent Mr. Córdoba Ruíz following his arrest and extradition from Colombia. *See* Attorney Update, dated January 23, 2023; *see also* ECF Nos. 8 (Financial Affidavit by Mr. Córdoba Ruíz), 9 (Minute Entry, dated January 20, 2023).

8.       Mr. Córdoba Ruíz was arraigned on January 31, 2023 and pleaded not guilty to Count One of the Indictment. *See* Minute Entry, dated January 30, 2023; ECF No. 15 (Transcript of January 31, 2023 Hearing). Because Mr. Córdoba Ruíz was not extradited on Counts Two or Three of the Indictment, the Court did not arraign him on those Counts. *See* ECF No. 15 at 5:19-22.

9.      On February 28, 2023, the Grand Jury returned the Superseding Indictment that dismissed Counts Two and Three. *See* ECF No. 12 (the "Superseding Indictment").

10.      On April 13, 2023, Mr. Córdoba Ruíz was arraigned on, and pleaded not guilty to, Count One of the Superseding Indictment. *See* Minute Entry, dated April 13, 2023; ECF No. 30 (Transcript of April 13, 2023 Hearing).

**PLEA DISCUSSIONS AND THE PLEA AGREEMENT**

11.    After being appointed as CJA counsel to Mr. Córdoba Ruíz, we did not immediately seek to resolve the case through a negotiated plea agreement.  Rather, we sought, obtained and reviewed the discovery produced by the Government; met with members of his family to learn more about his life and background; and repeatedly met with Mr. Córdoba Ruíz to discuss the case and gather relevant information, all with a view toward understanding the strength of the Government's case.  In that regard, it was readily apparent to me that the charges against Mr. Córdoba Ruíz were the product of a "sting" conducted by law enforcement and that Mr. Córdoba Ruíz's familial relations—principally his (now deceased) sister who was a controversial and outspoken leftist political figure in Columbia—made him a target for that type of law enforcement operation.  It was also apparent to me that Mr. Córdoba Ruíz did not possess credible indicia of being the large-scale narcotics trafficker depicted by the Government.  As an AUSA, I had worked on multiple international drug trafficking investigations and prosecutions and, as a defense attorney, had represented a Venezuelan client who had familial relations to Nicolas Maduro and was the subject of a law enforcement sting operation.  All of which is to say that, based on my professional training and experience, Mr. Córdoba Ruíz did not appear to me to be a major drug trafficker nor was he sophisticated in the means and methods of narcotics trafficking when I spoke to him as his attorney.

12.    From my perspective, the principal challenge of the case was the series of covert recordings that were made of Mr. Córdoba Ruíz and others that appeared to implicate him in the charged conspiracy.  On August 23, 2023, we filed pretrial motions on Mr. Córdoba Ruíz's behalf seeking additional discovery and related relief to assess the strength of the Government's case, including motions to compel the government's compliance with *Brady* and *Giglio*, discovery concerning cooperation between U.S. and Colombian authorities, and early production of translated recordings and wiretap evidence.  *See* ECF Nos. 33 (Motion), 34 (Memorandum of Law); *see also*

ECF No. 47 (Reply Memorandum of Law).

13.     My colleague Sophie Roytblat and I argued those motions before the Court on October 5, 2023.  *See* ECF No. 48 (Transcript of October 5, 2023 Hearing).  On October 16, 2023, the Court denied the motions.  *See* ECF No. 52.

14.     In the aftermath of that ruling, and in light of certain discovery produced by the government, we met with Mr. Córdoba Ruíz, with the assistance of a Court-certified Spanish language interpreter, to discuss both trial risks and potential plea options.

15.     On October 30, 2023, Ms. Roytblat and I participated in a telephone conference with the government to discuss a potential disposition.  During that call, among other things, I advocated that any plea offer should be to the lesser-included offense of Count One of the Superseding Indictment under Title 21, United States Code, Section 960(b)(2)(B), rather than Section 960(b)(1)(B).  In support of that position, I cited comparable cases in this District in which the government had agreed to pleas under Section 960(b)(2)(B) and argued that it would be inappropriate to seek a higher penalty based solely on Mr. Córdoba Ruíz's familial association with his late sister, a former Colombian senator who had previously been a person of interest to the government up until her death in January 2024.

16.     On December 13, 2023, the government transmitted a written plea offer in the form of a proposed plea agreement (the "Proposed Plea Agreement"), with an expiration date of December 20, 2023.

17.     The Proposed Plea Agreement provided for a plea to the lesser included offense of Count One of the Superseding Indictment, 960(b)(2)(B), reducing the statutory mandatory minimum from ten years to five years.  The Proposed Plea Agreement further proposed stipulation by Mr. Córdoba Ruíz to application of U.S.S.G. § 2D1.1, including a base offense level of 38 based on a

5

drug quantity exceeding 450 kilograms of cocaine, a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a stipulated total offense level of 37. With a Criminal History Category I, the stipulated Guidelines range was 210 to 262 months' imprisonment, and the Proposed Plea Agreement stated that Mr. Córdoba Ruíz was ineligible for safety-valve relief under 18 U.S.C. § 3553(f). The Proposed Plea Agreement also permitted Mr. Córdoba Ruíz to "seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing sentence pursuant to Title 18, United States Code, Section 3553(a)."

18.    On December 15, 17, and 18, 2023, counsel met with Mr. Córdoba Ruíz with the assistance of a Court-certified Spanish interpreter to further discuss the proposed plea. At the December 15 and 17 meetings, Ms. Roytblat and I met with Mr. Córdoba Ruíz at the Metropolitan Detention Center ("MDC"), along with a Court-certified Spanish interpreter, to discuss the plea offer. On December 17, Mr. Córdoba Ruíz stated his intent to accept the plea offer. That meeting was cut short due to a security lockdown at the MDC.

19.    The following day, December 18, 2023, I informed the government that Mr. Córdoba Ruíz intended to accept the plea. Later that day, my colleague Waleska Suero Garcia again met with Mr. Córdoba Ruíz, who confirmed his decision. That same day, Ms. Roytblat and I also spoke with Mr. Cordoba Ruiz's family regarding the potential implications of the Proposed Plea Agreement.

20.    On December 19, 2023, we obtained a certified Spanish translation of the Proposed Plea Agreement. On December 20, 2023, after further discussion with Ms. Suero-Garcia, Mr. Córdoba Ruíz executed the English and Spanish-translated versions of the Proposed Plea Agreement.

21.    During these meetings, we reviewed and discussed the Proposed Plea Agreement. In these discussions, I went over the risks and benefits of proceeding to trial versus entering a plea. I

explained to Mr. Córdoba Ruíz that the principal benefit of the Proposed Plea Agreement was that it lowered the applicable mandatory minimum in his case from ten-years to five-years and that we had the ability to argue for a below-Guidelines sentence at sentencing. I further explained to Mr. Córdoba Ruíz the differences between how mandatory minimum provisions and the Sentencing Guidelines work. Among other things. I explained that, under the Proposed Plea Agreement, 1) the Court was not bound by the Stipulated Guidelines Range and the Court could come to its own conclusions about the actual range; 2) the Court was free to depart from the Stipulated Guidelines Range in imposing sentence and enter a sentence that could be higher or lower than the Stipulated Guidelines Range; and 3) in contrast, with respect to any applicable mandatory minimum, absent limited exceptions, the Court could not impose a sentence below the minimum. I made clear to Mr. Córdoba Ruíz that the Court—and the Court alone—imposed sentence and, so long as the sentence was above any applicable mandatory minimum, the Court had discretion to sentence him to whatever it deemed appropriate under the relevant provisions of Title 18, United States Code, Section 3553(a). At no point did I tell Mr. Córdoba Ruíz that the Court would impose a specific sentence or that I knew in advance or could otherwise predict with any degree of certainty what sentence the Court would impose.

22.     I explained to Mr. Córdoba Ruíz that there were substantial risks associated both with going to trial and with entering a plea. In doing so, I repeatedly advised Mr. Córdoba Ruíz that it was his decision whether to go to trial, enter a plea or attempt to cooperate with the Government and that it was a deeply personal decision that only he could make.

23.     Based on my training and experience, I believed that the most likely outcome of a trial would be a conviction. The principal risk was the series of recordings and testimony that would place Mr. Córdoba Ruíz within the charged conspiracy. Although it was my assessment that the

evidence showed Mr. Córdoba Ruíz to be, at most, a broker whose actual conduct reflected a lack of experience and sophistication in narcotics trafficking, I believed a jury would still be inclined to convict him based on his own statements. I also believed that there were substantial legal and factual obstacles to asserting an entrapment or similar defense. There were, to be sure, mitigating facts that we could present that showed Mr. Córdoba Ruíz's lack of wealth normally associated with a major drug dealer, history of gainful employment, absence of any prior criminal history and comparatively limited role in the charged conspiracy. But those facts did not, in my view, materially reduce the risk of conviction. That assessment was informed by my prior experience trying a somewhat similar "sting" case in which the jury ultimately convicted my client likely on the basis of recordings and informant testimony, despite the Government tearing up and revoking its witness's cooperation agreement in front of the jury. I therefore advised Mr. Córdoba Ruíz that, in my view, there was a substantial likelihood that a jury would convict him and that securing an acquittal would be a huge challenge. I further advised Mr. Córdoba Ruíz that, in my view, if convicted, given the nature of the proposed narcotics transaction and the amounts discussed by the co-conspirators, the jury would likely find a drug quantity sufficient to trigger the 10-year mandatory minimum and that—for reasons discussed below—Mr. Córdoba Ruíz would not be eligible for "safety valve" relief.

24.    With respect to the Proposed Plea Agreement, its principal benefits were locking in a 5-year mandatory minimum and permitting us to argue for a below-Guidelines sentence based on the Section 3553(a) factors. While I believed that the Government's position on the drug weight for purposes of the Stipulated Guidelines Range and its insistence on the firearm enhancement were unnecessarily aggressive, I also recognized that there was a sufficient legal and factual basis for those positions. I explained this to Mr. Córdoba Ruíz and the difficult choice it presented for him. In my view, if he proceeded to trial, he would likely be convicted and be subjected to a 10-year mandatory

minimum that would bind the Court at sentencing.  There was the possibility that we could litigate "safety valve" relief after such a conviction, but there were—in my view—nearly insurmountable hurdles to successfully doing that, including the firearms enhancement, the potential for the Government to seek leadership enhancements post-trial and the need for Mr. Córdoba Ruíz to truthfully proffer concerning the offense.  In short, I advised Mr. Córdoba Ruíz that the most likely outcome of a trial was a conviction resulting in a 10-year mandatory minimum with a higher Guidelines range than that set forth in the Proposed Plea Agreement, particularly because he would not receive credit for acceptance of responsibility.

25.    On the one hand, I explained to Mr. Córdoba Ruíz that the Proposed Plea Agreement presented the most viable chance at receiving the lowest sentence under the circumstances.  First, it removed the 10-year mandatory minimum and allowed the Court discretion to impose a sentence below that threshold.  Second, while the Government was technically correct in calculating the Stipulated Guidelines Range based on my review of the evidence, I believed we had a meaningful opportunity to persuade the Court that such a calculation greatly exceeded Mr. Córdoba Ruíz's culpability in this case.  Specifically, we could argue under the Section 3553(a) factors that Mr. Córdoba Ruíz's limited role, lack of a prior criminal history, advanced age, lifetime of legitimate employment, lack of illicit wealth, family support and other mitigating circumstances warranted a sentence substantially below the Stipulated Guidelines.  Moreover, it was my view that the stipulated drug weight—while technically correct—substantially overstated the seriousness of the offense because it was part of the framework of the "sting" as constructed by Government operatives and no such amount was ever actually obtained or delivered.  Similarly, while the firearm enhancement was technically applicable, we could argue to that Mr. Córdoba Ruíz never personally possessed or used a firearm and, therefore, the Stipulated Guidelines Range overstated the seriousness of the offense

in that regard as well.

26.     Given the evidence against him, the inherent uncertainty of trial, and the opacity of the Court's ultimate views at sentencing, both paths carried significant risk for Mr. Córdoba Ruíz and his concerns about how to proceed were understandable.  In addition, Mr. Córdoba Ruíz harbored the reasonable belief that he had been targeted and lured into the conspiracy because law enforcement was targeting his well-known leftist sister and that his prosecution was unfair.  In my view, the choice came down to whether he should risk trial in the hope of a highly unlikely acquittal, while facing an almost certain 10-year mandatory minimum and a higher Guidelines range (because of lack of acceptance points), or maximize his chances for receiving a sentence below 10-years by accepting the Proposed Plea Agreement.  Mr. Córdoba Ruíz ultimately chose the latter course.

**CHANGE OF PLEA AND SENTENCING**

27.     On January 2, 2024, Mr. Córdoba Ruíz pleaded guilty to the lesser included offense in Count One of the Superseding Indictment.  *See* Minute Entry, dated January 2, 2024; ECF No. 58 (Transcript of January 2, 2024 Hearing) at 27:21-23.

28.     Before entering his plea, Mr. Córdoba Ruíz confirmed under oath that he had reviewed the Proposed Plea Agreement, had sufficient time to discuss it with counsel, understood its terms and consequences, and was pleading guilty voluntarily and of his own free will. He further confirmed that no promises had been made to him regarding the sentence he would receive and that he understood the Court was not bound by any sentencing recommendations or Guidelines calculations. *See, e.g.*, ECF No. 58 at 3:13-16, 6:13-22, 8:23-9:6, 20:25-21:7, 22:4-12.

29.     Following the plea, Ms. Roytblat attended Mr. Córdoba Ruíz's Presentence Investigation Report ("PSR") interview on January 23, 2024 at the MDC.  A draft PSR was disclosed on February 27, 2024.  *See* ECF No. 61.  After meeting with Mr. Córdoba Ruíz at the MDC on

March 8, 2024 to review the draft PSR, we timely served written objections to the draft PSR on his behalf on March 12, 2024. The Probation Office, considering Mr. Córdoba Ruíz's physical health and lack of criminal history, ultimately recommended a sentence of 120 months, well below the Guidelines range. *See* ECF No. 70 at 34.

30.      On April 12, 2024, we submitted on Mr. Córdoba Ruíz's behalf a 37-page sentencing submission advocating for the statutory minimum sentence of 60 months' imprisonment. In doing so, we advanced the arguments we had discussed with Mr. Córdoba Ruíz, including that the Stipulated Guidelines Range vastly overstated the seriousness of the offense and that Mr. Córdoba Ruíz's lack of criminal history, limited role, upstanding life, health concerns, and other the mitigating circumstances warranted such a sentence. *See* ECF No. 77.

31.      On April 26, 2024, the Court held a lengthy sentencing hearing and ultimately imposed a below-Guidelines sentence of 168 months' imprisonment followed by four years of supervised release. *See* ECF No. 89 (Transcript of April 26, 2024 Hearing) at 46; *see also* ECF No. 86 (Judgment).

32.      While Mr. Córdoba Ruíz and his counsel of course accepted the Court's ruling, we were deeply disappointed and respectfully disagree with the length of time the Court imposed. However, our disappointment is separate from the question of whether Mr. Córdoba Ruíz was properly advised of the nature and risk of the plea he entered. For the reasons set forth above, Mr. Córdoba Ruíz was advised of those risks and opted to take the path that afforded him the possibility of receiving a sentence below ten years. His and our hopes were not realized, but we all understood that it was ultimately the Court's decision to sentence him and that the sentence he ultimately received was within the range of possible outcomes.

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 23, 2026
        New York, New York

                                           Respectfully submitted,

                                           /s/ *John T. Zach*
                                           John T. Zach
                                           BOIES SCHILLER FLEXNER LLP
                                           55 Hudson Yards
                                           New York, New York 10001
                                           jzach@bsfllp.com
                                           Telephone: (212) 446-2300
                                           Facsimile: (212) 446-2350